UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA,

                           Plaintiff,

           against –

COUNTY OF SUFFOLK,

                           Defendant.

-------------------------------------------------------x

Civil Action-
No. CV-13-7183
(Seybert, J.)
(Tomlinson, M.J.)

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   FEB 24 2014   ★

LONG ISLAND OFFICE

## **CONSENT JUDGMENT**

i

TABLE OF CONTENTS

I. JURISDICTION AND VENUE .................................................................................-2-

II. APPLICABILITY ....................................................................................................-3-

III. DEFINITIONS .......................................................................................................-6-

IV. CIVIL PENALTY ..................................................................................................-8-

V. COMPLIANCE REQUIREMENTS .........................................................................-9-

VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT ...........................................-16-

VII. REPORTING REQUIREMENTS ........................................................................-22-

VIII. STIPULATED PENALTIES ..............................................................................-29-

IX. FORCE MAJEURE .............................................................................................-34-

X. DISPUTE RESOLUTION .....................................................................................-36-

XI. INFORMATION COLLECTION AND RETENTION .........................................-39-

XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .............................-41-

XIII. COSTS ..............................................................................................................-43-

XIV. NOTICES ..........................................................................................................-43-

XV. EFFECTIVE DATE ............................................................................................-45-

XVI. RETENTION OF JURISDICTION ....................................................................-45-

XVII. APPENDICES ..................................................................................................-45-

XVIII. MODIFICATION ...........................................................................................-46-

XIX. TERMINATION ...............................................................................................-46-

XX. PUBLIC PARTICIPATION ...............................................................................-47-

XXI. SIGNATORIES/SERVICE ...............................................................................-48-

ii

XXII. INTEGRATION ........................................................................................................ -48-

XXIII. FINAL JUDGMENT ................................................................................................ -49-

iii

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action, pursuant to, *inter alia*, Section 9006 of the Solid Waste Disposal Act, as amended by various laws, including the Resource Conservation and Recovery Act, as amended (collectively, "the Act" or "RCRA"), 42 U.S.C. 6991e, alleging, *inter alia*, that Defendant County of Suffolk ("Suffolk" or "Defendant") violated requirements of the Act regarding underground storage tanks ("USTs"), and the regulations promulgated thereunder, codified at 40 C.F.R. Part 280.

In the Complaint, the United States alleged that, at relevant times, Suffolk owned and/or operated USTs or UST systems, at which it: (1) failed to provide adequate release detection methods for tanks that routinely carry product, in violation of 40 C.F.R. § 280.41(a); (2) failed to provide overfill prevention system for existing tanks, in violation of 40 C.F.R. § 280.20(c)(1)(ii); (3) failed to provide methods of release detection for underground pressurized piping systems, in violation of 40 C.F.R. § 280.41(b)(1)(ii); (4) failed to perform testing of release detection for underground suction piping, in violation of 40 C.F.R. § 280.41(b)(2); and (5) failed to maintain and provide records of release detection, in violation of 40 C.F.R. § 280.45.

In the Complaint, the United States alleged that Suffolk has owned and/or operated at all relevant times, at least 68 USTs at 35 facilities, as listed in Appendix A to the Complaint.

In the Complaint, the United States also alleged, pursuant to 3008 of the Act, 42 U.S.C. § 6928, that Suffolk improperly disposed of spent fluorescent lamps without making a hazardous waste determination, in violation of 6 N.Y.C.R.R. § 372.2(a)(2).

Suffolk neither admits nor denies the allegations of the complaint.

1

The Parties recognize, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Judgment is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, except as provided in Section I, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 3008 and 9006(a)(1) of the Act, 42 U.S.C. §§ 6928 and 6991e(a)(1), and over the Parties. Venue lies in this District pursuant to Sections 3008 and 9006(a) of the Act, 42 U.S.C. §§ 3928 and 6991e(a), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because Suffolk is located in this judicial district, and the violations alleged in the Complaint are alleged to have occurred in this judicial district. For purposes of this Consent Judgment, or any action to enforce this Consent Judgment, Suffolk consents to the Court's jurisdiction over this Consent Judgment and any such action and over Suffolk and consents to venue in this judicial district.

2.      For purposes of this Consent Judgment, Suffolk agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 3008 and 9006 of the Act, 42 U.S.C. §§ 3928 and 6991e.

2

## II. APPLICABILITY

3.      The provisions of this Consent Judgment apply to and are binding upon the United States, and upon Suffolk and any officials, agents, servants, employees, successors, assigns, or other entities or persons otherwise bound by law.

4.      Transfer of Ownership or Operation.

(a)  Except as set forth in Paragraphs 4(b) and 4(c) below, or unless otherwise agreed in writing, until termination of this Consent Judgment pursuant to Section XIX, no transfer of ownership or operation of the Facilities, as defined herein, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Suffolk of its obligation to ensure that the terms of the Consent Judgment are implemented.  Except as set forth in Paragraph 4(b) and 4(c) below, or unless otherwise agreed in writing, any transfer of ownership or operation of any Facility subject to this Consent Judgment, as identified in Appendix A, to any other person or entity must be conditioned upon a written agreement between Suffolk and the proposed transferee to undertake Suffolk's obligations under the Sections V and VII of this Consent Judgment (except for Paragraph 13), to the extent that such obligations relate to the facility being transferred.  These obligations of the transferee shall be set forth in a written agreement between Suffolk and the proposed transferee, enforceable by the United States as third-party beneficiary of such agreement.  At least 30 Days prior to such transfer, Suffolk shall provide a copy of the proposed written agreement in a form approved by the United States that includes all of the obligations set forth in Sections V and VII of this Consent Judgment (except for Paragraph 13), and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and the United States, in accordance with Section

3

XIV of this Consent Judgment (Notices). No later than five days after the completion of such

transfer, Suffolk shall provide an executed copy of the written agreement to the United States in

accordance with Section XIV of this Consent Judgment (Notices). Any attempt to transfer

ownership or operation of the USTs without complying with this Paragraph and its subsections

constitutes a violation of this Consent Judgment and shall be subject to the stipulated penalties

described in Paragraph 49. No change in ownership or operation shall release Suffolk from its

obligation to perform the Supplemental Environmental Project set forth in Section VI

(Supplemental Environmental Project).

   (b) In the event of a bona fide transfer of ownership of a Facility to an unrelated third

party that possesses the requisite technical abilities and financial means to undertake the

obligations set forth in Sections V and VII of this Consent Judgment (except for Paragraph 13),

Suffolk shall be relieved of its respective obligations to ensure that the terms of the Consent

Judgment are implemented with respect to such Facility, provided that:

      i. Suffolk provides notice of the transfer to the United States at least 90 Days

prior to the transfer, and provides appropriate documentation regarding the transfer, including

copies of the sales contracts and other related documentation, as well as documentation that the

proposed transferee possesses the requisite technical abilities and financial means to undertake

the obligations set forth in Sections V and VII of this Consent Judgment (except for Paragraph

13), along with such other documentation as may be requested by the United States. This notice

shall include the certification that the proposed transferee is not affiliated with Suffolk by

contractual, corporate or financial relationship (other than a contractual, corporate or financial

relationship created by the transfer).

4

ii.   At the time of the transfer: (A) all requirements of the Consent Judgment are satisfied with respect to that Facility (other than a future reporting requirement), (B) all federal, state, and local requirements regarding ownership and operation of the USTs are satisfied with respect to the Facility; (C) there are no open spills, continuing releases, or threats of releases at the Facility; (D) the transferee is not affiliated with Suffolk by contractual, corporate or financial relationship (other than a contractual, corporate or financial relationship created by the transfer); and all of the information submitted in support of the transfer is truthful.

iii.   No later than five Days after completion of the transfer, Suffolk provides the United States with documentation thereof.

(c)   The transferee need not expressly agree to undertake obligations of the Consent Judgment where:

i.   Suffolk expressly confirms in writing that (A) the transferee will not operate the Facility as a service station or otherwise operate any of the USTs at the Facility, and (B) Suffolk will carry out the obligations of the Consent Judgment with respect to such Facility;

ii.   Suffolk demonstrates with appropriate documentation to the satisfaction of the United States that it has (A) properly temporarily or permanently closed the USTs at the Facility, as the case may be, and has submitted the applicable documentation thereof, as set forth in Paragraph 40(c) or (d), and (B) ensured that it retains any and all access necessary to carry out any UST-related work that may be required at the Facility after the transfer.

5.   Suffolk shall provide a copy of this Consent Judgment to all officials, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Judgment, as well as to any contractor retained to perform work required under this

5

Consent Judgment. Suffolk shall condition any such contract upon performance of the work in conformity with the terms of this Consent Judgment.

      6.    In any action to enforce this Consent Judgment, Suffolk shall not raise as a defense the failure by any of its officials, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Judgment

III. DEFINITIONS

      7.    Terms used in this Consent Judgment that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or the regulations found at 40 C.F.R. 280.12, unless otherwise provided in this Consent Judgment. Whenever the terms set forth below are used in this Consent Judgment, the following definitions shall apply:

      a.    "Complaint" shall mean the complaint filed by the United States in this action;

      b.    "Consent Judgment" shall mean this Consent Judgment and all appendices attached hereto (listed in Section XVII);

      c.    "CMS" shall mean a Central Monitoring System that collects all data generated by fully automated electronic release detection equipment at each respective Facility, and electronically transmits such data to at least one central location;

      d.    "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

6

e.      "EPA" shall mean the United States Environmental Protection
Agency and any of its successor departments or agencies;

f.      "Effective Date" shall have the definition provided in Section XV;

g.      "Facility" or "Facilities" shall mean the locations of all USTs or
UST systems owned and/or operated by Suffolk and located in Suffolk County, currently and/or
during the term of the Consent Judgment, as identified with more specificity in Appendix A,
excluding USTs or UST systems on any property held by Suffolk for the Suffolk County
Community College;

h.      "Interest" shall mean the interest rate specified in 28 U.S.C. §
1961;

i.      "Lamp" shall have the definition set forth in 6 NYCRR 374-
3.1(i)(5).

j.      "Letter of Interest" shall mean a letter from Suffolk to a landowner
in substantially the form set forth in Appendix D.

k.      "Paragraph" shall mean a portion of this Consent Judgment
identified by an Arabic numeral;

l.      "Parties" shall mean the United States and Suffolk;

m.      "Section" shall mean a portion of this Consent Judgment identified
by a roman numeral;

n.      "Suffolk" shall mean County of Suffolk, and all departments or
agencies of the County, excluding the Suffolk County Community College, that own and/or
operate USTs and/or UST systems subject to federal regulations promulgated pursuant to the Act

7

and set forth in 40 C.F.R. Part 280.

       o.    "Supplemental Environmental Project" or "SEP" shall mean the environmentally beneficial project required by Section VI of this Consent Judgment and undertaken pursuant to EPA's Final SEP Policy (May 1, 1998);

       p.    "Underground Storage Tank" or "UST" shall mean an underground storage tank as that term is defined in the Act's implementing regulations, 40 C.F.R. § 280.12;

       q.    "Underground Storage Tank system" or "UST system" shall mean underground storage tank system as that term is defined in the Act's implementing regulations, 40 C.F.R. § 280.12; and

       r.    "United States" shall mean the United States of America, acting on behalf of the Environmental Protection Agency.

       s.    "Upgrade" shall mean an upgrade of an UST system as that term is defined in the Act's implementing regulations, 40 C.F.R. § 280.12.

## IV. CIVIL PENALTY

      8.    Within 60 Days after the Effective Date of this Consent Judgment, Suffolk shall pay $500,000 as a civil penalty.

      9.    Suffolk shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided by the United States Attorney's Office to Suffolk, following entry of the Consent Judgment. At the time of payment, Suffolk shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter to the United

States in accordance with Section XIV of this Consent Judgment (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to

> EPA Cincinnati Finance Office
> 26 West Martin Luther King Drive
> Cincinnati, Ohio 45268
> Attention: Finance, Mail Code: NWD

The letter shall state that the payment is for the civil penalty owed pursuant to the Consent Judgment in United States v. County of Suffolk, and shall reference the civil action number, USAO number 2010V00067 and DOJ case number 90-7-1-09883.

## V.  COMPLIANCE REQUIREMENTS

10.     Suffolk shall comply with all provisions of Sections 9001-9010 of the Act, 42 U.S.C. §§ 6991-6991m, and its implementing regulations, 40 C.F.R. Part 280, that are applicable to USTs and UST systems at all of its Facilities, including any UST or UST system newly installed, brought into use, or discovered at one of the Facilities listed in Appendix A.  If an UST or UST system that comes to be owned or operated by Suffolk at any facility other than those Facilities listed on Appendix A, is newly installed, brought into use, or discovered, such additional facility shall be deemed included in the Facilities listed in Appendix A and, as such, the requirements of this Consent Judgment shall be applicable to such facility.  In the event that an UST or UST system at any Facility is newly installed, brought into use, or discovered, Suffolk shall notify the United States in writing, as set forth in Paragraph 11(a).  Such notification shall not be a defense to failure by Suffolk to implement the applicable compliance requirements.  In the event that, during the term of this Consent Judgment, the Administrator of EPA approves the State of New York, pursuant to Section 9004 of RCRA, 42 U.S.C. § 6991c , to operate an UST program to regulate USTs and UST systems, then the approved  state UST regulations will be

9

deemed to be the regulations applicable to Suffolk in lieu of the corresponding federal UST

regulations cited in this Consent Judgment.   In the event of a State-approved UST program,

EPA may enforce the approved state UST regulations pursuant to Section 9006 of RCRA, 42

U.S. C. Section 6991e .

      11.    Compliance Requirements for USTs and UST Systems at All Facilities.

The compliance requirements set forth in Paragraph 10 include, but are not limited to, the

following:

      a.    Within 30 days of an UST system being newly installed, brought

into use, or discovered at any Facility owned or operated by Suffolk, Suffolk shall notify the

NYSDEC or the designated state or local agency or department in accordance with 40 C.F.R. §

280.22 and provide EPA with a copy of such notification.  Such notification shall include a

schedule of all applicable compliance and reporting dates, including but not limited to the

performance of the most recent testing of the functionality of release detection systems and the

coverage period of the financial responsibility mechanism in effect for such UST system.  The

requirements of this Sub-paragraph also apply to any USTs acquired in the future by ownership,

lease, foreclosure or other means by Suffolk, whether acquired at a Facility listed in Appendix A,

or at any other Facility owned or operated by Suffolk.

      b.    No later than 30 Days from the Effective Date for existing USTs or

from the date of acquisition of any newly-acquired UST, Suffolk shall comply with the

performance standards for new UST systems set forth at 40 C.F.R. § 280.20.

      c.    No later than 60 Days from the Effective Date for existing USTs,

or from the date of acquisition of any newly-acquired UST, Suffolk shall comply with upgrade

requirements set forth at 40 C.F.R. § 280.21 or permanent closure requirements set forth at 40 C.F.R. § 280.71.

        d.     Suffolk shall complete a site assessment pursuant to 40 C.F.R. § 280.72 within 60 Days of an UST system's closure or removal. If contaminated soils or groundwater, or free product, whether in liquid or in vapor phase, is found, Suffolk shall report such release to the NYSDEC or the designated state or local agency or department in accordance with 40 C.F.R. § 280.50 and undertake corrective action in accordance with 40 C.F.R. § 280.72(b). Suffolk shall provide simultaneous copies to EPA of all correspondence sent to NYSDEC or the designated state or local agency or department related to any such release, and shall provide copies to EPA of all correspondence received from NYSDEC or the designated state or local agency or department related to any such release within ten days of receipt.

        e.     For any Facility for which there has been a confirmed release from an UST system, Suffolk shall comply with the release response and corrective action requirements of Subpart F, 40 C.F.R. Part 280. Suffolk shall provide simultaneous copies to EPA of all correspondence sent to NYSDEC or the designated state or local agency or department related to any such release, and shall provide copies to EPA of all correspondence received from NYSDEC or the designated state or local agency or department related to any such release within ten days of receipt.

        f.     For any UST system that is temporarily closed, Suffolk must continue release detection unless the UST systems have been emptied in accordance with 40 C.F.R. § 280.70(a). For any UST system that has been temporarily closed for three months or more, Suffolk must comply with the requirements of 40 C.F.R. § 280.70(b). For any UST

11

system that does not meet either performance standards in 40 C.F.R. § 280.20 for new UST systems or the upgrading requirements in 40 C.F.R. § 280.21 for existing UST systems and that is temporarily closed for more than twelve months, Suffolk must comply with the requirements of 40 C.F.R. § 280.70(c), including permanent closure of the substandard UST in accordance with 40 C.F.R. §§ 280.71-74.

g.      Commencing no later than 30 Days from the Effective Date, Suffolk shall comply with general operating requirements set forth at 40 C.F.R. Part 280, Subpart C, including, but not limited to:

(i)      operation and maintenance of spill and overfill control, as required by 40 C.F.R. § 280.30;

(ii)      repair requirements set forth at 40 C.F.R. § 280.33; and

(iii)      reporting and recordkeeping requirements set forth at 40 C.F.R. § 280.34.

h.      Commencing no later than 30 Days from the Effective Date, Suffolk shall comply with release detection requirements for tanks and piping set forth at 40 C.F.R., Part 280, Subpart D, including, but not limited to, the recordkeeping requirements set forth at 40 C.F.R. § 280.45.

i.      In the event of a suspected release or unusual operating condition (as defined in 40 C.F.R. § 280.50(b)), Suffolk shall follow the reporting procedures set forth in 40 C.F.R. § 280.50 for reporting to NYSDEC or the designated state or local agency or department, and perform necessary release investigation, release confirmation, response actions and/or corrective action, as required by 40 C.F.R. Part 280, Subparts E and F. If NYSDEC or the

12

designated state or local agency or department determines that corrective action is required, then Suffolk shall work with NYSDEC or the designated state or local agency or department in designing and implementing a corrective action plan. Suffolk shall provide copies to EPA of all correspondence with the NYSDEC or the designated state or local agency or department related to such suspected release or unusual operating condition

12.     Suffolk shall install and/or use release detection monitoring equipment which shall meet the performance standards of 40 C.F.R. §§ 280.43 and 280.44 on the UST systems and associated piping owned and/or operated by Suffolk at each Facility listed in Appendix A. The requirements of this Paragraph also apply to any USTs acquired in the future by ownership, lease, foreclosure or other means by Suffolk, whether acquired at a Facility listed in Appendix A, or at any other Facility owned or operated by Suffolk.

a.     Suffolk shall operate and maintain in good working condition the release detection monitoring equipment.

b.     In the absence of a CMS, Suffolk shall record all alarms in a log book, including, without limitation, those alarms arising from potential or suspected releases, spill or overfill of tanks, malfunction or failure of components, and disconnection of components. Upon the request of EPA, Suffolk shall provide any information obtained or recorded by the above-described electronic release detection monitoring equipment to EPA. In the event that, during the term of the Consent Judgment , Suffolk installs a CMS that is capable of collecting, in real time, all "FUEL ALARM", "ALARM," and "ACTIVE" data collected by fully automated electronic release detection monitoring equipment, and of electronically transmitting such data to at least one centralized location, Suffolk shall not be required to comply

13

with the requirement to record all alarms in a log book that is set forth in this Sub-paragraph.

13.    UST Management Plan. Suffolk shall prepare and implement an UST Management Plan as follows:

a.    Within 60 Days of Suffolk's signature of the Consent Judgment, Suffolk shall submit to the United States for review and approval an UST Management Plan to ensure proper management and operation of the UST systems it owns and/or operates in Suffolk County in compliance with the Act and its implementing regulations.   The UST Management Plan shall be prepared in accordance with Appendix B and submitted in accordance with Section XIV (Notices). EPA will review and approve the UST Management Plan in accordance with the procedures set forth in Paragraphs 15-19 (Approval of Deliverables).

b.    In the event that Suffolk implements a CMS, within 60 days of implementation, Suffolk shall submit to the United States for review and approval a revised UST Management Plan that reflects amended procedures for ensuring proper management and operation of the UST systems it owns and/or operates in Suffolk County in compliance with the Act and its implementing regulations. The amended procedures will reflect any revised practices due to the implementation of the CMS.

14.    Hazardous Waste Compliance Requirements. Suffolk shall comply with all applicable regulatory requirements of Title 6 of New York Code, Rules and Regulations ("NYCRR") Subpart 374-3 for handling of universal waste (including standards applicable to Lamps, as described in 6 NYCRR 374-3.1(e)).

15.    Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Judgment, EPA shall specify in writing:

14

a) approval of the submission; b) approval of the submission upon specified conditions; c) approval of part of the submission and disapprove the remainder; or d) disapproval of the submission. The specific reasons for any disapproval shall be enumerated.

16.    If the submission is approved pursuant to Paragraph 15(a), Suffolk shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 15(b) or (c), Suffolk shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions.

17.    If the submission is disapproved in whole or in part pursuant to Paragraph 15(c) or (d), Suffolk shall, within 30 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Suffolk shall proceed in accordance with the preceding Paragraph.

18.    Any stipulated penalties applicable to the original submission, as provided in Section VIII, shall accrue during the 30-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Suffolk's obligations under this Consent Judgment, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

19.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Suffolk to correct any deficiencies, in

15

accordance with the preceding Paragraphs, or EPA may correct any deficiencies, subject to

Suffolk's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as

provided in the preceding Paragraphs and in Section VIII (Stipulated Penalties).

20.    Permits. Where any compliance obligation under this Consent Judgment

requires Suffolk to obtain a federal, state, or local permit or approval, Suffolk shall submit timely

and complete applications and take all other actions necessary to obtain all such permits or

approvals. Suffolk may seek relief under the provisions of Section IX (Force Majeure) for any

delay in the performance of any such obligation resulting from a failure to obtain, or a delay in

obtaining, any permit or approval required to fulfill such obligation, if Suffolk has submitted

timely and complete applications and has taken all other actions necessary to obtain all such

permits or approvals.

21.    The compliance requirements of this Consent Judgment do not relieve

Suffolk of any compliance obligations required by the Act or its implementing regulations, or by

any other federal, state, or local law, regulation, permit, or other requirement

VI. SUPPLEMENTAL ENVIRONMENTAL PROJECT

22.    Suffolk shall implement the Supplemental Environmental Project

described herein, in accordance with the provisions of this Consent Judgment.

23.    Suffolk shall implement a Land Acquisition and Environmental

Restoration Project ("LAERP") SEP for the purpose of protecting groundwater in Suffolk

County's Sole Source Aquifer from discharges of pollutants. The purpose of the LAERP is to

acquire title in land, acquire an interest or interests in land through covenants or otherwise,

and/or accomplish an environmental restoration and protection project on land that is purchased

16

as part of the LAERP, already owned by Suffolk or owned by a third party, and to manage, into perpetuity, the land and any associated ecological resources to protect and/or enhance groundwater, thereby securing significant environmental and public health benefits. For purposes of this SEP, an environmental restoration and protection project is one which has a nexus to groundwater and enhances the condition of the ecosystem or immediate geographic area adversely affected. These projects may be used to restore or protect natural environments (such as ecosystems) and man-made environments, which may involve the remediation of facilities and buildings, to the extent that such remediation involves removal/mitigation of contaminated materials which are a continuing source of releases.

24. Suffolk shall spend no less than $1,500,000 to implement the LAERP. Notwithstanding Paragraph 28, the land or interests otherwise eligible for inclusion in the LAERP will not be rendered ineligible by virtue of the fact that Suffolk previously identified the land or interest as a potential open space purchase, unless Suffolk has been actually engaged in negotiating for the purchase of such land or interest, or taken other steps to start purchase of such land or interest (except for Suffolk's transmission of a Letter of Interest, as defined herein, to a landowner), before the date of Suffolk's signature of the Consent Judgment. These funds shall be used solely for the purchase of land or interest, or project(s) for the environmental restoration and protection of land, and not for such costs as personnel, inspections, lawyers' fees, or other fees or expenses associated with the cost of purchasing the land, except that such funds may be used for the preparation of a title report showing the history of title to land approved for purchase under the LAERP.

25. Within 30 Days of the Effective Date, Suffolk shall designate in writing to

17

EPA a LAERP Coordinator who shall serve as the contact person for Suffolk matters relating to the LAERP.

26.     Within 60 Days of the Effective Date, Suffolk shall submit a LAERP Plan that is in accordance with the requirements set forth in Appendix C.

27.     The LAERP shall provide for the specific process by which Suffolk shall identify real property within Suffolk County which Suffolk does not presently own or in which Suffolk does not presently have an interest, in which Suffolk will acquire title, in which Suffolk will, in satisfaction of the purposes of the LAERP, acquire an interest, or on which Suffolk will accomplish an environmental restoration and protection project. The LAERP shall also provide, consistent with Paragraph 23, the specific process for restoring land already owned by Suffolk or a third party. The additional requirements of the LAERP are set forth in Appendix C and incorporated herein.

28.     No SEP credit can be given for environmental restoration on property purchased or restored as part of the LAERP, already owned by Suffolk or owned by a third party, if any of the following conditions exist: (a) the land is a federal or state superfund site; (b) remediation is planned or under way; (c) the site is subject to EPA or NYSDEC remediation obligations; (d) the site is a RCRA facility; (e) the site involves petroleum contamination subject to state or federal cleanup obligations; (f) the site is subject to obligations under the Toxic Substances Control Act; (g) the restoration involves asbestos or lead paint cleanup work required under state or federal law or rules; or (h) there is a prior plan or legal obligation not otherwise mentioned in this Paragraph to perform cleanup/environmental restoration.

29.     EPA will review and approve the proposed LAERP Plan in accordance

18

with the procedures set forth in Paragraphs 15 through 19.

      30.    Suffolk shall implement the LAERP Plan as follows:

      a.    The LAERP Plan shall be implemented and all activities contemplated therein shall be completed within four years of the Effective Date.

      b.    If after completion of the LAERP, the full amount of the LAERP funds have not been expended, Suffolk shall pay a stipulated penalty pursuant to Section VIII of this Consent Judgment.

      31.    Suffolk is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Consent Judgment. Suffolk may use contractors or consultants in planning and implementing the SEP.

      32.    With regard to the SEP, Suffolk certifies the truth and accuracy of each of the following:

      a.    that, as of the date of signature of this Consent Judgment, Suffolk is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

      b.    that the SEP is not a project that Suffolk was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Judgment;

      c.    that Suffolk is not using any funds for the SEP that were, are, or will be allocated, appropriated or otherwise designated for use for Suffolk's New Drinking Water Protection Program (effective December 1, 2007), Multifaceted Land Preservation Program,

19

Environmental Legacy Fund, or any of the other County open space programs that are designed for the protection of natural environments;

        d.     that Suffolk is not a party to any open federal financial assistance transaction that is funding or could be used to fund the same activities described in the SEP, nor has the same activity been described in an unsuccessful federal financial assistance transaction proposal submitted to EPA within two years of the date of this settlement (unless the project was barred from funding as statutorily ineligible). For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally guaranteed loan, or other mechanism for providing federal financial assistance whose performance period has not yet expired;

        e.     that Suffolk has not received and will not receive credit for the SEP in any other enforcement action; and that Suffolk will not receive any reimbursement for any portion of the SEP from any other person.

        33.     <u>SEP Progress Reports</u>. Suffolk shall submit semi-annual progress reports to the United States in accordance with Section XIV (Notices). The first semi-annual progress report will be due seven months after the Effective Date and will cover the first six months after the Effective Date. Each subsequent semi-annual report will be due no later than 30 days after the end of the previous six-month period. Suffolk shall submit semi-annual reports for at least four years after the Effective Date of the Consent Judgment, or until termination of the Consent Judgment, whichever is later. The semi-annual progress report shall contain the following information:

a.    a detailed description of the steps that have been taken to

implement the SEP;

b.    a description of any problems encountered in implementing the

SEP and the solutions thereto; and

c.    an itemized list of all eligible SEP costs expended to date.

34.    SEP Completion Report.  Within 60 Days after the deadline for

completion of the SEP, Suffolk shall submit a SEP Completion Report to the United States in

accordance with Section XIV (Notices).  The SEP Completion Report shall contain the following

information:

a.    a detailed description of the SEP as implemented;

b.    a description of any problems encountered in completing the SEP

and the solutions thereto;

c.    an itemized list of all eligible SEP costs expended;

d.    a description of the environmental and public health benefits

resulting from implementation of the SEP (with a quantification of the benefits and pollutant

reductions, if feasible); and

e.    a certification that the SEP has been fully implemented pursuant to

the provisions of this Consent Judgment, or, if not fully implemented, a description of the ways

in which it has not been fully implemented.

35.    If EPA requests information in addition to that described herein, in order

to evaluate Suffolk's implementation of the SEP, Suffolk shall provide such information.

21

36.   After receiving the SEP Completion Report, the United States shall notify Suffolk whether or not Suffolk has satisfactorily completed the SEP. If Suffolk has not completed the SEP in accordance with this Consent Judgment, stipulated penalties may be assessed under Section VIII of this Consent Judgment. Such stipulated penalties shall not accrue during EPA's consideration of the SEP Completion Report.

37.   Disputes concerning the satisfactory performance of the SEPs and the amount of eligible SEP costs may be resolved under Section X of this Consent Judgment (Dispute Resolution). No other disputes under this Section shall be subject to Dispute Resolution.

38.   Each submission required under this Section shall be signed by an official with knowledge of the relevant SEP and shall bear the certification language set forth in Paragraph 43.

39.   Any public statement, oral or written, in print, film, or other media, made by Suffolk making reference to either SEP under this Consent Judgment shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. County of Suffolk, taken on behalf of the U.S. Environmental Protection Agency under the Resource Conservation and Recovery Act."

VII. REPORTING REQUIREMENTS

40.   Suffolk shall submit the following reports set forth in this Section to the United States for all Facilities until the expiration of four years after the Effective Date or the termination of the Consent Judgment, whichever is earlier. All submissions required by this Section shall indicate the case name and case docket number and be sent to the following

22

address, with a copy of the transmittal correspondence, without attachments, sent to the United

States Attorney's Office at the address set forth in Section XIV (Notices):

> U.S. Environmental Protection Agency, Region 2
> Division of Enforcement and Compliance Assistance
> RCRA Compliance Branch
> 290 Broadway
> New York, New York 10007
> Attention: Dennis McChesney

a. Records Required for Any UST System Upgrade. If applicable, no later than 20 days

after any UST system upgrade, Suffolk shall provide documentation that spill and overfill

equipment was installed pursuant to 40 C.F.R. § 280.20(c). If Suffolk believes that spill and

overfill equipment is not required, Suffolk shall provide a written explanation no later than 20

days after the UST system upgrade. In the event that the UST system being upgraded is subject

to the UST regulations governing integrity assessment, cathodic protection and/or UST lining,

then Suffolk shall provide documentation of the most recent such inspections/assessments for the

upgraded UST system.

b. Records Required for any New UST System Installation or UST Acquisition. Suffolk

shall submit the following records for any new UST system installation: (i) certificate of

installation pursuant to 40 C.F.R. § 280.22 no later than 20 days after installation; (ii) current

state UST registration listing the new USTs consistent with 40 C.F.R. § 280.22 no later than 20

days after installation or acquisition; (iii) the results of the most recent annual test of the line leak

detector conducted in accordance with the manufacturer's requirements no later than 30 days

after installation or acquisition; and (iv) if applicable, the results of the most recent integrity

assessment, cathodic protection inspection, and/or lining inspection. Suffolk shall thereafter

provide the results of the annual line leak detector test no later than 30 days after the anniversary of the most recent test.

    c. Records Required for any UST System in Temporary Closure. Suffolk shall submit the following records for any UST system in temporary closure: (i) monthly release detection records as set forth in Paragraph 42(e), except that, if the UST system has been emptied, release detection is not required and Suffolk shall provide documentation within ten days of compliance with 40 C.F.R. § 280.70(a); and (ii) documentation within ten days of compliance with 40 C.F.R. § 280.70(b). In the event that the UST System is subject to the UST regulations governing cathodic protection, then evidence of functional cathodic protection must also be submitted.

    d. Records Required for any UST System Undergoing Permanent Closure or Removal. Suffolk shall submit the following records for any UST system undergoing permanent closure or removal: (i) notice to the United States at least 15 days in advance of any scheduled UST closure or removal; (ii) a report of the site assessment that is required by Paragraph 11(d) within 60 days of the completion of the site assessment and, in any event, no later than 120 days after UST closure or removal; and (iii) in the event of a finding of contaminated soils or groundwater, or free product as a liquid or vapor, Suffolk shall (A) as required by Paragraph 11(d), report such release to NYSDEC or the designated state or local agency or department and undertake any necessary response actions and/or corrective action overseen by NYSDEC or the designated state or local agency or department; (B) notify EPA in writing of the substance of such reporting, response actions and/or corrective action within ten days of taking such action(s); and (C) send simultaneous copies to EPA of all correspondence with NYSDEC or the designated state or local agency or department regarding such response actions and/or corrective action plan, including,

but not limited to, letters, reports, and plans submitted to NYSDEC or the designated state or local agency or department.

e. Records Required for Monthly and Annual Release Detection. As set forth in this Sub-paragraph, for all Facilities, Suffolk shall maintain records of release detection monitoring (including USTs and piping) and/or submit such records to EPA as follows:

i. Maintenance of Records in Central Location. Suffolk shall keep all records of monthly and annual release detection (e.g., printouts, inspection checklists) in a central location.

ii. Submission of Records.

(a) Suffolk shall submit to EPA monthly release detection records (e.g., printouts, inspection checklists) by the tenth of the following month for six months after the Effective Date. In the event of failed tests or deviant sensor readings during this period, EPA may extend this period of record submission.

(b) After the initial six-month record submission period, or the extended record submission period as the case may be, within 30 Days after the end of each quarter (i.e., by January 31, April 30, July 31, and October 31), Suffolk shall certify to EPA in writing that each UST system at each Facility is in full compliance with the federal applicable monthly and annual release detection requirements set forth in 40 C.F.R. Part 280, Subpart D. In the event of any noncompliance or uncertainty regarding compliance, Suffolk shall identify the UST system and Facility, set forth the facts relating to the noncompliance, identify the regulation being violated, indicate why compliance has not been achieved, identify any required task(s) to achieve compliance and propose a schedule for the prompt correction of the non-compliance. EPA may, in its sole discretion, allow Suffolk an extra period, not more than 90 Days in length, to resolve

25

the identified non-compliance.  Suffolk shall, in any event, submit a subsequent certification within 20 Days of completion of the tasks required to achieve compliance, certifying that each UST system for which compliance was not previously certified is now in compliance with all federal monthly and annual release detection regulations applicable to Suffolk's UST systems set forth in 40 C.F.R. Part 280, Subpart D, including the recordkeeping requirements set forth at 40 C.F.R. 280.45.  If EPA requests copies of any monthly and annual release detection records, Suffolk shall provide such records.

(c)  No later than 20 days after a failed monthly or annual release detection test or any reading other than "normal" of the release detection system for USTs and piping (e.g., inconclusive results), Suffolk shall submit the printout indicating the test results or deviant sensor reading and a written statement indicating what steps have and/or will be taken in response no later than ten Days after a failed monthly test or 30 Days after a failed annual test. Such statement shall include dates for work to be performed and documentation of such work, such as contracts and receipts. Suffolk shall also make any notification required by 40 C.F.R. § 280.50 as a result of a failed test or deviant sensor reading to the NYSDEC or the designated state or local agency or department and simultaneously submit copies to EPA of such notification.

f.  Records Required for All Operating UST Systems.  Suffolk shall provide the following records for all operating UST systems:

i.  Repairs.  Suffolk shall submit copies of documentation of all UST system repairs, pursuant to 40 C.F.R. § 280.34(b)(3), and repairs to release detection equipment, pursuant to 40 C.F.R. § 280.45(c), respectively, within 30 days of the repair.

ii. <u>Known or Suspected Releases</u>.  Within ten days of the incident, Suffolk shall submit all information pertaining to known or suspected releases that are required to be reported pursuant to 40 C.F.R. 280.50, including, at a minimum, the following information:  (A) all recorded alarms from release detection systems, from any of the UST systems, and (B) investigations and response actions and/or corrective actions taken with respect to any alarms or known or suspected releases, including, but not limited to, sampling analysis results.  Suffolk shall notify EPA in writing of the substance of such response actions and/or corrective action within ten days of taking any such action(s).  Suffolk shall send simultaneous copies to EPA of all correspondence with NYSDEC or the designated state or local agency or department regarding such response actions and/or corrective action plan, including, but not limited to, letters, reports and plans submitted to NYSDEC or the designated state or local agency or department.  The requirements of this Sub-Paragraph shall be applicable, at a minimum, to the Hauppauge Fueling Facility identified in Appendix A, for which corrective overseen by the NYSDEC is currently required.  If any other Facility owned or operated by Suffolk is identified as requiring response actions and/or corrective action overseen by the NYSDEC, or the designated state or local agency or department, Suffolk shall notify EPA in writing no later than ten days after the identification of any such Facility.

41.     <u>Notification of Non-Compliance, Violations or Other Events That May</u> <u>Pose a Threat to Public Health or Welfare or the Environment.</u>  If Suffolk violates, or has reason to believe that it may violate, any requirement of this Consent Judgment, Suffolk shall notify the United States of such violation and its likely duration, in writing, within ten Days of the Day Suffolk first becomes aware of the violation, with an explanation of the violation's likely cause

27

and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Suffolk shall so state in the report. Suffolk shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Suffolk becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section IX (Force Majeure).

42.    Notification of Immediate Threat.  Whenever any violation of this Consent Judgment or any other event affecting Suffolk's performance under this Consent Judgment, or a condition arising at any Facility owned and/or operated by Suffolk, may pose an immediate threat to the public health or welfare or the environment, Suffolk shall notify EPA orally and by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Suffolk first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

43.    Each report submitted by Suffolk under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

28

This certification requirement does not apply to emergency situations or similar instances where compliance with this requirement would be impractical.

44.     The reporting requirements of this Consent Judgment do not relieve Suffolk of any reporting obligations required by the Act or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

45.     Any information provided pursuant to this Consent Judgment may be used by the United States in any proceeding to enforce the provisions of this Consent Judgment and as otherwise permitted by law.

VIII.  STIPULATED PENALTIES

46.     Suffolk shall be liable for stipulated penalties to the United States for violations of this Consent Judgment as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Judgment, including, but not limited to, the transfer provisions, the compliance and reporting requirements, the SEP requirements, and any work plan or schedule approved under this Consent Judgment, according to all applicable requirements of this Consent Judgment and within the specified time schedules established by or approved under this Consent Judgment.

47.     Late Payment of Civil Penalty.  If Suffolk fails to pay the civil penalty required to be paid under Section IV of this Consent Judgment (Civil Penalty) when due, Suffolk shall pay a stipulated penalty of $500 per Day for each Day that the payment is late.

48.     Compliance Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the requirements set forth in Paragraphs 4, 10-14, 20, and Appendix B of this Consent Judgment:

29

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500.00 | 1st through 14th Day |
| $1,000.00 | 15th through 30th Day |
| $2,000.00 | 31st Day and beyond |

49. <u>Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Paragraph 4 and Section VII of this Consent Judgment:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300.00 | 1st through 14th Day |
| $500.00 | 15th through 59th Day |
| $2,000.00 | 60th Day and beyond |

50. <u>SEP Compliance</u>. The following stipulated penalties shall accrue for each violation of the SEP requirements set forth in Section VI and Appendix C of this Consent Judgment:

a. If Suffolk fails to comply with the milestones set forth in Section VI and Appendix C, or if Suffolk fails to satisfactorily complete the SEP by the deadlines set forth in Paragraphs 25 and 26, or if Suffolk fails to submit SEP reports as required by Paragraphs 33 and 34, Suffolk shall pay stipulated penalties for each day for which they fail to meet an applicable deadline or satisfactorily complete the SEP, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300.00 | 1st through 14th day |
| $500.00 | 15th through 30th day |
| $1,000.00 | 31st day and beyond |

b.      If Suffolk fails to implement the SEP in accordance with the provisions of this Consent Judgment, Suffolk shall pay a stipulated penalty of $1,800,000. The penalty under this Sub-paragraph shall accrue as of the date specified for completing the SEP or the date performance ceases, whichever is earlier.

c.      Except as set forth in the following Sub-paragraph, if Suffolk implements the SEP, but fails to spend at least 90% of the amounts that were required for the SEP, as set forth in Paragraph 24, Suffolk shall pay a stipulated penalty in an amount equal to two times the difference between the amounts that was required for the SEP, as set forth in Paragraph 24, and the amounts that Suffolk has expended that EPA determines are properly creditable towards the SEP.

51.      If Suffolk certifies, with supporting documentation, that at least 90% of the amounts that were required for the SEP, as set forth in Paragraph 24, and EPA determines, in its sole discretion, that such expenditures are creditable for the SEP at issue, and that Suffolk made good faith and timely efforts to complete the SEP at issue, then Suffolk shall not pay a stipulated penalty.

52.      Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. However, stipulated penalties shall not accrue: (a) with respect to a deficient submission under Paragraphs 15 to 19, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Suffolk of any deficiency; and (b) with respect to judicial review by this Court of any dispute under Section X (Dispute Resolution), during the

31

period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Judgment.

53.     Suffolk shall pay any stipulated penalty within 60 Days of receiving the United States' written demand therefor.

54.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Judgment.

55.     Stipulated penalties shall continue to accrue as provided in Paragraph 78, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by a decision of the United States that is not appealed to the Court or by agreement, Suffolk shall pay accrued penalties determined to be owing, together with Interest, to the United States within 60 Days of receipt of the United States' decision or within the time frame set forth in the agreement.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Suffolk shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Suffolk shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

d.     . Notwithstanding the payment deadlines set forth in this Paragraph, Suffolk may request an extension of the payment deadlines in the event that it is necessary to

32

present at the next regularly scheduled general meeting of the County Legislature a resolution

pursuant to Suffolk County Charter C2-11 and C2-12 to appropriate the funds that are required to

be paid pursuant to this Paragraph.  Such request, if any, shall be made within five days of the

triggering event under the respective Sub-Paragraphs of this Paragraph.  If EPA determines, in

its sole discretion, that Suffolk's request is justified, then payment shall be made within 30 Days

after final adoption of such appropriating resolution.  Stipulated penalties shall not continue to

accrue after the determination has been made under this Paragraph, unless otherwise indicated in

the triggering agreement, decision or order, as the case may be.

56.     Obligations Prior to the Effective Date.  Upon the Effective Date of this

Consent Judgment, the stipulated penalty provisions of this Consent Judgment shall be

retroactively enforceable with regard to any and all violations of Paragraph 13 and Appendix B

that have occurred prior to the Effective Date of the Consent Judgment, provided that stipulated

penalties that may have accrued prior to the Effective Date may not be collected unless and until

this Consent Judgment is entered by the Court.

57.     Suffolk shall pay stipulated penalties owing to the United States in the

manner set forth and with the confirmation notices required by Paragraph 9, except that the

transmittal letter shall state that the payment is for stipulated penalties and shall state for which

violation(s) the penalties are being paid.

58.     Except as provided in Paragraph 55, above, stipulated penalties under this

Section shall begin to accrue on the Day after performance is due or on the Day a violation

occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily

33

completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Judgment.

59.     If Suffolk fails to pay stipulated penalties according to the terms of this Consent Judgment, Suffolk shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

60.     Subject to the provisions of Section XII of this Consent Judgment (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Judgment shall be in addition to any other rights, remedies, or sanctions available to the United States for Suffolk's violation of this Consent Judgment or applicable law. Where a violation of this Consent Judgment is also a violation of the Act and its implementing regulations, Suffolk shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## IX.  FORCE MAJEURE

61.     "Force majeure," for purposes of this Consent Judgment, is defined as any event arising from causes beyond the control of Suffolk, of any entity controlled by Suffolk, or of Suffolk's contractors that delays or prevents the performance of any obligation under this Consent Judgment despite Suffolk's best efforts to fulfill the obligation. The requirement that Suffolk exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest

34

extent possible. "Force Majeure" does not include Suffolk's financial inability to perform any obligation under this Consent Judgment.

62.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Judgment, whether or not caused by a force majeure event, Suffolk shall provide notice orally or by electronic or facsimile transmission to the United States, within 72 hours of when Suffolk first knew that the event might cause a delay. Within seven days thereafter, Suffolk shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Suffolk's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Suffolk, such event may cause or contribute to an endangerment to public health, welfare or the environment. Suffolk shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Suffolk from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Suffolk shall be deemed to know of any circumstance of which Suffolk, any entity controlled by Suffolk, or Suffolk's contractors knew or should have known.

63.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Judgment that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for

performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Suffolk in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

64.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Suffolk in writing of its decision. The United States' position shall be binding unless Suffolk invokes dispute resolution under Section X.

65.     If Suffolk elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 30 Days after receipt of the United States' notice. In any such proceeding, Suffolk shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Suffolk complied with the requirements of Paragraph 61 and 62, above. If Suffolk carries this burden, the delay at issue shall be deemed not to be a violation by Suffolk of the affected obligation of this Consent Judgment identified to the United States and the Court.

X. DISPUTE RESOLUTION

66.     Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Judgment. Suffolk's failure to seek

36

resolution of a dispute under this Section shall preclude Suffolk from raising any such issue as a defense to an action by the United States to enforce any obligation of Suffolk arising under this Consent Judgment.

      67.   Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Judgment shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Suffolk send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 60 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Suffolk invoke formal dispute resolution procedures as set forth below.

      68.   Formal Dispute Resolution. Suffolk shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by delivery to the United States pursuant to Section XIV (Notices) a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Suffolk's position and any supporting documentation relied upon by Suffolk.

      69.   The United States shall serve its Statement of Position within 45 Days of receipt of Suffolk's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States'

37

Statement of Position shall be binding on Suffolk, unless Suffolk files a motion for judicial

review of the dispute in accordance with the following Paragraph.

70.    Suffolk may seek judicial review of the dispute by filing with the Court

and serving on the United States, in accordance with Section XIV of this Consent Judgment

(Notices), a motion requesting judicial resolution of the dispute. The motion must be filed

within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding

Paragraph. The motion shall contain a written statement of Suffolk's position on the matter in

dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set

forth the relief requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Judgment.

71.    The United States shall respond to Suffolk's motion within the time period

allowed by the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York ("Local Rules"). Suffolk may file a reply memorandum, to the extent

permitted by the Court and the Local Rules.

72.    Standard of Review.

a.    Disputes Concerning Matters Accorded Record Review. Except

as otherwise provided in this Consent Judgment, in judicial review of any dispute brought under

Paragraph 68 pertaining to the adequacy or appropriateness of plans, procedures to implement

plans, schedules or other items requiring EPA approval under this Consent Judgment; and all

other disputes that are accorded review on the administrative record under applicable principles

of administrative law, Suffolk shall have the burden of demonstrating, in the administrative

record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     Other Disputes. Except as otherwise provided in this Consent Judgment, in any other dispute brought under Paragraph 68, Suffolk shall bear the burden of demonstrating that its position complies with this Consent Judgment, and applicable law.

73.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Suffolk under this Consent Judgment, unless and until final resolution of the dispute so provides. Except as otherwise set forth in this Consent Judgment, stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 55. If Suffolk does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

74.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Judgment, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Judgment;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Judgment;

c.     obtain samples and, upon request, splits of any samples taken by

39

Suffolk or its representatives, contractors, or consultants;

        d.     obtain documentary evidence, including photographs and similar data; and

        e.     assess Suffolk's compliance with this Consent Judgment.

      75.    Upon request, Suffolk shall provide EPA or its authorized representatives splits of any samples taken by Defendant. Upon request, EPA shall provide Defendant splits of any samples taken by EPA. Until five years after the termination of this Consent Judgment, Suffolk shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Suffolk's performance of its obligations under this Consent Judgment. This includes, but is not limited to, reports required by Section VI, and reports required by Section VII.

      76.    This information-retention requirement shall apply regardless of any contrary county, corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Suffolk shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

      77.    At the conclusion of the information-retention period provided in the preceding Paragraph, Suffolk shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Suffolk shall deliver any such documents, records, or other information to the United States. Suffolk may assert that certain

40

documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Suffolk assert such a privilege, it shall provide the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Suffolk. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Judgment shall be withheld on grounds of privilege. This includes, but is not limited to, documents that Suffolk is required to provide to the United States pursuant to Section XIV.

78.      Suffolk may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Suffolk seeks to protect as CBI, Suffolk shall follow the procedures set forth in 40 C.F.R. Part 2.

79.      This Consent Judgment in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Suffolk to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

80.      This Consent Judgment resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

81.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Judgment, except as expressly stated in Paragraph 80. This Consent Judgment shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 80. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Suffolk's Facilities, whether related to the violations addressed in this Consent Judgment or otherwise.

82.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities or to Suffolk's violations, Suffolk shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 80.

83.     This Consent Judgment is not a permit, or a modification of any permit issued or obtained pursuant to any federal, State, or local laws or regulations. Suffolk is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Suffolk's compliance with this Consent Judgment shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of

42

this Consent Judgment, warrant or aver in any manner that Suffolk's compliance with any aspect of this Consent Judgment will result in compliance with provisions of the Act, its implementing regulations, or with any other provisions of federal, State, or local laws, regulations, or permits.

84.     This Consent Judgment does not limit or affect the rights of Suffolk or of the United States against any third parties, not party to this Consent Judgment, nor does it limit the rights of third parties, not party to this Consent Judgment, against Defendant, except as otherwise provided by law.

85.     This Consent Judgment shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Judgment.

## XIII. COSTS

86.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Suffolk, or to enforce the obligations of this Consent Judgment.

## XIV. NOTICES

87.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Judgment, they shall be made in writing and addressed as follows:

To the United States:

Sandra L. Levy
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
RE: USAO No. 2010V00067

43

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044-7611
Re: DOJ No. 90-7-1-09883

To EPA:

Stuart Keith
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
Office of Regional Counsel, WTS Branch
290 Broadway
New York, New York 10007-1866

Dennis McChesney, Ph.D., M.B.A.
Team Leader, UST Team
Division of Enforcement and Compliance Assistance
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, New York 10007-1866

To Suffolk:

Dennis M. Brown, Esq.
County Attorney
Suffolk County Department of Law
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099

The Honorable Gilbert Anderson, P.E.
Commissioner
Suffolk County Department of Public Works
335 Yaphank Avenue
Yaphank, NY 11980

       88.     Any Party may, by written notice to the other Parties, change its

designated notice recipient or notice address provided above.

44

89.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Judgment or by mutual agreement of the Parties in writing.

## XV. EFFECTIVE DATE

90.     The Effective Date of this Consent Judgment shall be the date upon which this Consent Judgment is entered by the Court or a motion to enter the Consent Judgment is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Suffolk hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Judgment before entry, or the Court declines to enter the Consent Judgment, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVI. RETENTION OF JURISDICTION

91.     The Court shall retain jurisdiction over this case until termination of this Consent Judgment, for the purpose of resolving disputes arising under this Consent Judgment or entering orders modifying this Consent Judgment, pursuant to Sections X and XVIII, or effectuating or enforcing compliance with the terms of this Consent Judgment.

## XVII. APPENDICES

92.     The following appendices are attached to and part of this Consent Judgment:

> Appendix A is the list of Suffolk's Facilities with USTs as of November 2013;
>
> Appendix B describes the requirements of the UST Management Plan;

45

Appendix C is the description of the requirements of the Land Acquisition Environmental Restoration Project SEP.

Appendix D is a sample Letter of Interest, as defined herein.

### XVIII. MODIFICATION

93.     The terms of this Consent Judgment, including the attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Consent Judgment, it shall be effective only upon approval by the Court. The terms and schedules for the UST Management Plan and the SEPS and the list of Facilities set forth in Appendix A may be modified upon written agreement of the Parties without Court approval, unless such modification effects a material change to the terms of this Consent Judgment or materially affects Suffolk's ability to meet the requirements of this Consent Judgment.

94.     Any disputes concerning modification of this Consent Judgment shall be resolved pursuant to Section X of this Consent Judgment (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 72, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

### XIX. TERMINATION

95.     After Suffolk has (a) satisfactorily complied with the transfer, compliance, and reporting requirements of Sections II, V, , and VII of this Consent Judgment, for a period of four years, (b) completed the payment and SEP requirements of Sections IV and VI of this Consent Judgment, and (c) paid any accrued stipulated penalties as required by this Consent

46

Judgment, Suffolk may serve upon the United States a Request for Termination of the Consent Judgment. In that Request, Suffolk must state that it has satisfied all requirements of the Consent Judgment, together with all necessary supporting documentation.

96.     Following receipt by the United States of Suffolk's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Suffolk has satisfactorily complied with the requirements for termination of this Consent Judgment. If the United States agrees that the Consent Judgment may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Judgment.

97.     If the United States does not agree that the Consent Judgment may be terminated, Suffolk may invoke Dispute Resolution under Section X of this Consent Judgment. However, Suffolk shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 70, until 60 Days after service of their Request for Termination.

<h3 style="text-align:center">XX. PUBLIC PARTICIPATION</h3>

98.     This Consent Judgment shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Judgment disclose facts or considerations indicating that the Consent Judgment is inappropriate, improper, or inadequate. Suffolk consents to entry of this Consent Judgment without further notice and agrees not to withdraw from or oppose entry of this Consent Judgment by the Court or to challenge any provision of the Consent Judgment, unless the United States has notified Suffolk in writing that it no longer supports entry of the Consent Judgment.

47

## XXI. SIGNATORIES/SERVICE

99.     Each undersigned representative of Suffolk, the United States Attorney's Office, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind the Party he or she represents to this document.

100.    This Consent Judgment may be signed in counterparts, and its validity shall not be challenged on that basis.  Suffolk agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Judgment and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

101.    This Consent Judgment constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Judgment and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the Appendices, and submissions that are subsequently made and approved pursuant to this Consent Judgment, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Judgment or the settlement it represents, nor shall it be used in construing the terms of this Consent Judgment.

[continued on next page]

48

## XXIII. FINAL JUDGMENT

102.    Upon approval and entry of this Consent Judgment by the Court, this

Consent Judgment shall constitute a final judgment of the Court as to the United States and

Suffolk. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


IT IS SO ORDERED:


_____                    Dated: *February 24, 2014*
United States District Judge


49

FOR PLAINTIFF UNITED STATES OF AMERICA

Dated:  Washington, D.C.
        December 12, 2013

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Dated: Brooklyn, New York
       Dec 16, 2013

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
Attorney for Plaintiff
271 Cadman Plaza East
Brooklyn, New York 11201

By:     SANDRA L. LEVY
        Assistant United States Attorney
        (718) 254-6014

Dated:  New York, New York
        December ___, 2013

ERIC SCHAAF
Regional Counsel, Region 2
United States Environmental Protection Agency

50

FOR PLAINTIFF UNITED STATES OF AMERICA

Dated:   Washington, D.C.
         December __, 2013

                                        _____
                                        ROBERT G. DREHER
                                        Acting Assistant Attorney General
                                        Environment and Natural Resources Division
                                        United States Department of Justice

Dated: Brooklyn, New York
        _____, 2013

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        Attorney for Plaintiff
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

                    By:    _____
                                        SANDRA L. LEVY
                                        Assistant United States Attorney
                                        (718) 254-6014

Dated:   New York, New York
         December 11, 2013
                                        _____
                                        ERIC SCHAAF
                                        Regional Counsel, Region 2
                                        United States Environmental Protection Agency

50

FOR DEFENDANT, COUNTY OF SUFFOLK:


_____            12/17/13
Dennis M. Brown, Esq.                        Dated
County Attorney
Suffolk County Department of Law
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099


_____            12/17/13
Dennis M. Cohen                              Dated
Chief Deputy County Executive
H. Lee Dennison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788-0099


53

## APPENDIX A

### FACILITIES WITH USTS SUBJECT TO THE CONSENT JUDGMENT

For purposes of the Consent Judgment, "Facility" or "Facilities" means all USTs or UST systems owned and/or operated by Suffolk. This includes the federally-regulated USTs and UST systems, as identified below, as well as any new facility(ies) that Suffolk comes to own and/or operate at any time before termination of the Consent Judgment.

As of November 2013, Suffolk owns and/or operates the following Facilities:

Suffolk County Department of Public Works ("DPW") Highway Maintenance Yard, Nicholls Road, Centereach, NY – one UST

DPW Highway Maintenance Yard, 97 Crooked Hills Road, Commack, NY – five USTs

Groundsman Garage, Griffing Avenue, Commack, NY – one UST

DPW Highway Maintenance Yard, Shinnecock Hill Road, Hampton Bays, NY – two USTs

Fueling Facility, Veterans Highway, Hauppauge, NY – four USTs

Police Garage, Old Willet's Path, Hauppauge, NY – one UST

DPW Highway Maintenance Yard, Oakwood Road, Huntington, NY – one UST

DPW Highway Maintenance Yard, CR-27 Riverhead Greenport Road, Southold, NY – three USTs

Highway Garage, CR31 Westhampton Beach, Westhampton, NY (a/k/a Suffolk County Gabreski Airport) – two USTs

Fueling Facility C342, 335 Yaphank Avenue, Yaphank, NY – three USTs

Garage C342, 335 Yaphank Avenue, Yaphank, NY – seven USTs

Police Garage, C850, CR 21 Yaphank Avenue, Yaphank, NY – three USTs

Bergen Point County Park, 69 Bergen Avenue, Babylon, NY – one UST

Cathedral Pines Park, Yaphank Road, Middle Island, NY – one UST

Cedar Point Park, Cedar Point Road, East Hampton, NY – one UST

Indian Island Park, Riverside Drive, Riverhead, NY – two USTs

Timber Point Park, Great River Road, Great River, NY – three USTs

West Sayville Park, 92 West Avenue, West Sayville, NY – two USTs

Suffolk County Police Department Precincts:

> 1st Precinct, 555 Route 109, West Babylon, NY – one UST
>
> 2nd Precinct, 1171 Park Avenue, Huntington, NY – one UST
>
> 3rd Precinct, 1630 Fifth Avenue, Bay Shore, NY – two USTs
>
> 5th Precinct, 125 Waverly Avenue, Patchogue, NY – one UST
>
> 6th Precinct, 400 Middle County Road (Route 25), Selden, NY – one UST
>
> 7th Precinct Sub-Station, One Newins Street, Center Moriches, NY – one UST
>
> 7th Precinct, 1491 William Floyd Parkway, Shirley, NY – one UST

BOMARC (Suffolk County Police Academy), 110 Old Country Road, Westhampton, NY – one UST

Police Helicopter Facility, 100 Arrival Avenue, Ronkonkoma, NY – two USTs

Police Marine Bureau, Great River Road, Great River, NY – three USTs

Bergen Point WPCP, 600 Bergen Avenue, Babylon, NY – three USTs

VEEB (Suffolk County Fire Academy) C551, Yaphank Avenue, Yaphank, NY – two USTs

Suffolk County Probation C110, CR21 Yaphank Avenue, Yaphank, NY – one UST

S.D. #7, Twelve Pines, Woodside Avenue, Medford, NY – one UST

STP, Yaphank, Yaphank Avenue, Yaphank, NY – two USTs

Data Processing Building #50, 345 Old Willets Path, Hauppauge, NY – one UST

Suffolk County Forensics Lab, Veterans Highway, Hauppauge, NY – one UST

Riverhead Power Plant, N. Country Road, Riverhead, NY – one UST

Suffolk County Jail, 100 Center Drive (Route 24), Riverhead, NY – one UST

Suffolk County Skilled Nursing, Glover Drive, Yaphank, NY – one UST

Emergency Vehicle Garage, Smithtown Boulevard, Ronkonkoma, NY – one UST

Suffolk County Police Headquarters, Yaphank Avenue, Yaphank, NY – two USTs

Cohalan Court Complex, 400 Carleton Avenue, Central Islip, NY – one UST

S.D.#1 Port Jefferson, PS#1- Barnum Avenue, Port Jefferson, NY – one UST

Vanderbilt Museum, 180 Little Neck Drive, Centerport, NY – one UST

54

## APPENDIX B

### UST MANAGEMENT PLAN

1.     The UST Management Plan shall provide for Suffolk's staff (or third-party personnel) to receive proper UST operator training concerning the management, inspection, operation and maintenance of its UST systems, and proper response to alarms and suspected or known releases, in accordance with the training requirements of the Energy Policy Act of 2005 Operator Training Grant Guidelines (http://www.epa.gov/oust/fedlaws/optraing.htm)

2.     The Plan shall identify Suffolk's personnel who are responsible for managing, inspecting, operating and maintaining the UST systems, and indicate an inspection schedule that will be implemented to ensure that the UST systems are being operated in compliance with RCRA Subtitle I and its implementing regulations.

3.     The Plan shall, at a minimum, cover the following requirements of the Act and its implementing regulations:

a.  UST Inventory

b.  Tank Upgrades/Replacements

c.  Leak Detection
    i)     Automatic Tank Gauging
    ii)    Tank Tightness Testing
    iii)   Periodic Line Tightness Testing
    iv)    Release Detection System Testing

d.  Spill and Overfill Prevention
    i)     Spill Protection
    ii)    Overfill Protection

e.  Inspection Procedures

f.  Facility Operator Training Requirements
    i)     Class A Operator

ii)    Class B Operator
iii)   Class C Operator

g.  Reporting and Recordkeeping
    i)    Reporting Requirements
    ii)   Recordkeeping Requirements
    iii)  Availability and Maintenance of Records

4. The Plan shall include citations to relevant federal, state and local UST requirements.

56

## APPENDIX C

### LAND ACQUISITION AND ENVIRONMENTAL RESTORATION PROJECT
### SUPPLEMENTAL ENVIRONMENTAL PROJECT

1. The Land Acquisition and Environmental Restoration Project shall include provisions for:

    (a)    Identification of a reasonable inventory of potentially available properties by size and location that are potentially available for acquisition or restoration;

    (b)    Assessing the current environmental condition, environmental sensitivity and community benefits offered by the acquisition and restoration of such properties;

    (c)    Assessing the nature, cost and efficacy of restoring any areas suffering from prior environmental degradation;

    (d)    Establishing and assessing the relevant criteria for evaluating properties as potential candidates for protection; and

    (e)    Considering the views of the public, including those views that have already been expressed in connection with Suffolk's prior consideration of open space purchases.

2. The LAERP Plan shall provide that:

    (a)    Suffolk shall not enter into any agreement with a governmental entity or not-for-profit entity to manage the acquired and/or restored property without EPA's review and written approval;

57

       (b)     Acquired lands shall be restored, if necessary, so that they function as open spaces that reduce or prevent pollution on such lands or other lands not acquired;

If the acquisition is of a leasehold or easement, that such leasehold or easement shall extend for a period of not less than 100 years;

       (c)     The subject lands are perpetually maintained as a protected area, free from uses that are not consistent with ecosystem and groundwater protection, through deed restrictions or covenants consistent with the LAERP;

     3.     When a proposed land acquisition for title or interest is placed on the Agenda for approval by the Suffolk County Legislature, Suffolk shall also include in the Agenda (for purpose of informing the public and news media) the language required by Paragraph 39 of the Consent Judgment that "This project will be undertaken in connection with the settlement of an enforcement action, United States v. County of Suffolk, taken on behalf of the U.S. Environmental Protection Agency under the Resource Conservation and Recovery Act."

## APPENDIX D

### SAMPLE LETTER OF INTEREST

To:  Owner/Address

Re:    Site:            Tax Map Number:

Dear Mr./Mrs. _____:

Suffolk County has identified the above referenced parcel as being of interest to our Land Preservation Program.  This preservation program is entirely voluntary.

If you are interested in considering participating in the program, return the bottom portion of this letter to me at the address below.  If you have questions, please call me at (631) 853-5__.  Your interest would prompt us to have your property appraised in order to determine market value and enable us to make you an offer.  You incur no obligation by responding to this voluntary process.

I look forward to hearing from you.


Yours Truly,


Land Management Specialist

CERTIFIED MAIL

Site:                    Tax Map No.

☐     I am interested in discussing a possible sale to the County of Suffolk.

☐     I am not interested in discussing a possible sale to the County of Suffolk.

I realize I incur no obligation by returning this form.

Name_____Telephone No._____

Address_____

59